SYLVAN ELECTRIC BATH, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7411. Promulgated January 31, 1927.

*John L. McMaster, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

PHILLIPS: Petitioner appeals from the determination by the Commissioner of deficiencies in income and profits taxes as follows:

| | |
|---|---|
| 1919 | $414. 82 |
| 1920 | 513. 68 |
| 1921 | 946. 62 |

It alleges as error the refusal of the Commissioner to allow any value for tangible or intangible assets acquired by it for stock and his refusal to allow depreciation on such tangible property. A further error alleged in the petition was waived at the hearing.

### FINDINGS OF FACT.

The petitioner, Sylvan Electric Bath, Inc., is a corporation organized under the laws of the State of New York, and owns and operates a system of baths known as hydro-electro-cataphoretic baths, intended for the relief of rheumatism and similar diseases and complaints.

The Sylvan Electric Bath was originally established about the year 1900 by one George Bueckle, now the president of the company and majority holder of the common stock. The system is based on the method developed by one Stanger in Germany. Prior to establishing the baths Bueckle made an extensive personal study of the system in Germany and acquired patent rights and special equipment. The system contemplates the use of electricity combined with certain bark extracts, and requires specialized equipment and technical supervision.

The baths were conducted as an individual business by Bueckle until the year 1915, when it was incorporated in order that additional capital might be acquired.

Sylvan Electric Bath, Inc., was organized on January 14, 1915, under a certificate of incorporation signed by Bueckle and four other incorporators.

In an agreement executed on January 30, 1915, it was provided that Bueckle should convey to the corporation the following assets:

All his rights in the Sylvan Electric Bath business, the appliances, fixtures and other articles of personal property used in the treatment and cure of diseases for which the said Sylvan Electric Bath is established, and also the right to use the patents, methods and treatments as now used and conducted in his present establishment, said patents being described as follows:

Nos. 590171. Electric Bath.
633164. Electrotherapeutic Baths.
652446. Electromedical Baths.
653708. *Hydro-Electrotherapeutic Apparatus.*
692554. Chairs for Therapeutic purposes,

and any other patents he may secure after this day that may in anywise apply to or be used in this business.

And Trade Marks Nos. 35200. Medicated Bathing Liquids.
35400. Medicated Bathing Fluid.
70713. Medicated Bathing Fluid.

Also the good will consisting of
  Its registered name,
  List of prospective patrons,
  List of physicians prescribing the treatment, and all other matter now
    in his possession in any way helpful, or likely to be helpful in conducting
    this business of the Sylvan Electric Bath.

The agreement further provided that the corporation should have $65,000 of 7 per cent preferred stock and $35,000 of common stock; that all of the common stock and $3,000 of the preferred stock should be issued to Bueckle for such property, and that Bueckle should assign $17,000 of the common stock to the purchasers of the balance of the preferred stock.

The agreement also provided, among other things, that Bueckle should devote his entire time and attention to the business at a salary of $3,600 per annum until the treatments averaged one hundred daily, at which time the salary was to be $5,000 per annum; and that during the completion of a new building the business was to be leased to Bueckle, who was to receive all the income and pay all the expenses.

On December 1, 1915, Bueckle, by formal bill of sale, conveyed to the corporation all of the assets of the business, both tangible and and intangible, and on the same date made a formal assignment of the patents and trade-marks which was duly registered in the office of the Commissioner of Patents.

On the transfer of the assets $3,000 par value of preferred stock and $35,000 par value of common stock was issued to Bueckle, who thereafter transferred approximately $17,000 par value of such common stock to purchasers of the preferred stock.

On March 3, 1917, the par value of the stock outstanding was $97,500, including both common and preferred.

When the books of account were opened the assets so transferred were set up on the books as " Sundry Assets," and in preparing income-tax returns and trial balance sheets this account carried on the books as " Sundry Assets " was erroneously listed and described as " Good Will."

In its return the petitioner included $38,000, as the cost of these assets, in invested capital. This amount was disallowed by the Commissioner.

The tangible assets transferred to the corporation on December 1, 1915, in exchange for its capital stock, had an actual cash value of $10,000 as a part of a continuing business. The intangible assets had no separate market value.

> *Decision redetermining deficiency will be entered on 10 days' notice, under Rule 50.*